EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Elvis Payano<br><br>Apelado<br><br>v.<br><br>Héctor Cruz, por sí y en representación de la Sociedad Legal de Gananciales que compone con su esposa Hilda Pagán Navarro<br><br>Apelante<br><br>SP Management, Corp.<br><br>Apelado | 2022 TSPR 78<br><br>209 DPR \_\_\_\_ |

Número del Caso: AC-2017-89

Fecha: 23 de junio de 2022

Tribunal de Apelaciones:

    Panel IV

Abogados de la parte apelante:

    Lcda. Myrta Morales Cruz
    Lcdo. Luis J. Torres Asencio
    Lcdo. Yamil Vázquez Hidalgo

Materia: Sentencia del Tribunal con Opiniones de Conformidad.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Elvis Payano<br><br>    Apelado<br><br>       v.<br><br>Héctor Cruz, por sí y en representación de la Sociedad Legal de Gananciales que compone con su esposa Hilda Pagán Navarro<br><br>    Apelante<br><br>SP Management, Corp.<br><br>    Apelado | AC-2017-0089 |

SENTENCIA

En San Juan, Puerto Rico, a 23 de junio de 2022.

Evaluado el recurso de *Apelación* que presentó la parte apelante, se revocan las sentencias recurridas y se desestima la demanda sin perjuicio.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. La Jueza Presidenta Oronoz Rodríguez emite una Opinión de Conformidad. El Juez Asociado señor Estrella Martínez emite una Opinión de Conformidad a la que se une el Juez Asociado señor Colón Pérez. El Juez Asociado señor Martínez Torres está conforme y emite la expresión siguiente a la que se unen la Jueza Asociada señora Pabón Charneco, el Juez Asociado señor Kolthoff Caraballo y el Juez Asociado señor Feliberti Cintrón:

> "Al leer lo que se expresa en la Opinión de Conformidad del Juez Asociado señor Estrella Martínez, considero que es importante recordar que este es el Tribunal Supremo y no la Asamblea Legislativa de Puerto Rico. Es allí y no aquí que se puede investigar lo que se denuncia en la Opinión de Conformidad. Por imperativo del esquema constitucional de poderes separados, no nos toca fiscalizar cómo el Departamento de Vivienda implementa la política pública".

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Elvis Payano<br><br>    Apelado<br><br>       v.<br><br>Héctor Cruz, por sí y en representación de la Sociedad Legal de Gananciales que compone con su esposa Hilda Pagán Navarro<br><br>    Apelante<br><br>SP Management, Corp.<br><br>    Apelado | AC-2017-0089 | |

La Jueza Presidenta Oronoz Rodríguez emite una Opinión de Conformidad

En San Juan, Puerto Rico, a 23 de junio de 2022.

Estoy conforme con revocar las determinaciones de los foros recurridos y se desestimar la demanda sin perjuicio. No obstante, este Tribunal debió explicar y exponer conforme a derecho, si la Administración de Vivienda Pública (AVP) es parte indispensable en una acción de desahucio y cobro de dinero relacionada con un contrato suscrito al amparo de la Ley Orgánica de la Administración de Vivienda Pública, Ley Núm. 66 de 17 de agosto de 1989, 17 LPRA sec. 1001 et seq. Particularmente, en una demanda que se presentó contra una familia que se realojó en una vivienda privada tras la demolición del complejo de vivienda pública Las Gladiolas. Perdimos la oportunidad de interpretar los contratos para

realojo de residentes de vivienda pública en viviendas privadas. Por entender que este resultado ameritaba un análisis minucioso sobre el tracto histórico de la controversia, encuentro necesario suscribir esta Opinión.

## I.

En el 2010, varias familias que vivían en el residencial público Las Gladiolas fueron desalojaron de sus viviendas porque el complejo residencial se iba a demoler.[1] Por acuerdo con la AVP varios residentes se realojaron en apartamentos privados, con la promesa de que eventualmente regresarían a vivir a un nuevo complejo de vivienda pública que se construiría en los terrenos donde estaban localizadas las antiguas torres de Las Gladiolas. A esos fines, cada familia realojada en una vivienda privada recibió de la AVP una "Notificación de No Desplazamiento" en la que se les garantizó tener prioridad en el proceso de ocupación del nuevo complejo residencial. El Sr. Héctor Cruz y su esposa, la Sra. Hilda Pagán, junto a sus tres hijos, fueron una de las familias que se realojaron en una vivienda privada.

El 1 de octubre de 2015 el Sr. Elvis Payano (señor Payano o Arrendador) otorgó un *Contrato de Arrendamiento para Realojo en Mercado Privado* con la Administración de Vivienda

---

[1] Las Gladiolas I y II fueron un complejo de vivienda pública localizado en Hato Rey que albergó a 676 familias durante más de 30 años. Para el 2006 el Departamento de Vivienda Federal autorizó su demolición debido a que el complejo no cumplía con los códigos de construcción de Puerto Rico. Véase, Microjuris, *Encontrados Vivienda Pública y exresidentes de Las Gladiolas*, https://aldia.microjuris.com/2019/02/23/encontrados-vivienda-publica-y-exresidentes-de-las-gladiolas/, 23 de febrero de 2019.

Pública (AVP o Arrendataria) y el Sr. Héctor Cruz (señor Cruz). Las partes comparecieron al contrato de manera individual. El señor Payano compareció como dueño-arrendador del inmueble privado; la AVP compareció por conducto del presidente de A&M Contract, Inc. —administrador del residencial Las Gladiolas— como la parte arrendataria,[2] y —por último— compareció el señor Cruz en calidad de residente de la vivienda arrendada. Cabe señalar que, de este contrato se desprende que el señor Cruz "es residente de Vivienda Pública sujeto a todas las cláusulas y condiciones dispuestas en el Contrato de Arrendamiento que tiene suscrito con la Administración de Vivienda Pública y con todos los Reglamentos que forman parte del mismo".[3]

En el contrato de arrendamiento para realojo se estableció, entre otras cosas, que: (1) el arrendamiento estaría vigente del 30 de noviembre de 2015 al 29 de noviembre de 2016; (2) la AVP debía pagar el canon mensual de $1,150.00 al señor Payano; (3) el Señor Cruz aportaría la cantidad de $617.00 del canon mensual, el cual debía pagarse directamente a SP Management; (4) la AVP podía terminar el contrato y proceder a una reubicación con notificación previa de treinta

---

[2] Aunque el contrato fue firmado originalmente por el presidente de A&M Contract, Inc., a partir del 1 de noviembre de 2015 la compañía SP Management Corp. (SP Management) pasó a ser el nuevo administrador del residencial. Por lo que, SP Management sustituyó a A&M Contract en el contrato.

[3] Apéndice, Anejo 1, pág. 59. Así pues, se colegir que el señor Cruz tiene dos contratos de arrendamiento con la AVP, (1) el original que suscribió para ser residente de Las Gladiolas ("contrato de arrendamiento original"), y (2) el Contrato de Arrendamiento para Realojo en Mercado Privado, aquí en controversia ("contrato de arrendamiento para realojo").

(30) días al señor Payano y al señor Cruz; (5) de notificar oportunamente la cancelación del contrato, y del residente —señor Cruz— negarse a entregar la vivienda en el periodo indicado, la AVP podía proceder a solicitar el desahucio ante el tribunal con competencia; (6) de ventilarse una acción de desahucio por parte de la AVP, el residente estaría obligado a pagar la totalidad de la renta de mercado privado a la parte arrendadora, y (7) el contrato de arrendamiento para realojo está sujeto a todas las cláusulas y condiciones dispuestas en el contrato de arrendamiento original y a todos los Reglamentos que forman parte de la AVP.[4] Así, en virtud del contrato de arrendamiento para realojo, el codemandado Cruz y su familia ocuparon un inmueble localizado en la Urbanización San Gerardo, en el Municipio de San Juan, propiedad del señor Payano.

Transcurridos varios meses, el 7 de junio de 2016, el señor Payano recibió de SP Management un aviso de cancelación del contrato de arrendamiento para realojo.[5] El aviso no informaba la razón por la cual se daba por cancelado el contrato de arrendamiento para realojo, más bien, se limitó a expresar que a partir del 30 de junio de 2016 el contrato

---

[4] En específico, la sección undécima (11) del contrato de arrendamiento expresa que:

La Parte Arrendataria [AVP] utilizará la propiedad como unidad de vivienda para una familia que será designada Jefe de Familia [señor Cruz] por la Parte Arrendataria [AVP]. El Jefe de Familia [señor Cruz] continuará por su parte **sujeto a todas las cláusulas y condiciones dispuestas en el Contrato de Arrendamiento que tiene suscrito con la administración de Vivienda Pública, y a todos los Reglamentos que forman parte del mismo.** (énfasis suplido).

[5] Apéndice, pág. 43.

quedaba cancelado. A su vez, SP Management le notificó al señor Cruz su intención de cancelar el contrato de arrendamiento para realojo, pero lo hizo más de un mes después, el 13 de julio de 2016. En ese aviso, la AVP le comunicó al señor Cruz y a su familia que tendrían que ser nuevamente realojados a otro lugar, so pena de que, de negarse a ello, se le cancelaría el contrato de arrendamiento original. Además, la AVP le indicó al señor Cruz que la cancelación del contrato de arrendamiento para realojo sería efectiva el 1 de agosto de 2016.[6] Por último, la AVP le advirtió al señor Cruz que tenía derecho a impugnar la cancelación del contrato de arrendamiento para realojo.

En consecuencia, el señor Cruz comenzó un procedimiento administrativo ante la AVP para impugnar la cancelación del contrato de arrendamiento para realojo. De conformidad, el 27 de julio de 2016, el foro administrativo determinó que el contrato en cuestión estaba debidamente cancelado. Inconforme, el señor Cruz apeló la decisión ante el Tribunal de Apelaciones. El 14 de diciembre de 2016, el foro apelativo emitió una sentencia mediante la cual revocó la resolución administrativa por falta de un oficial examinador imparcial. Por consiguiente, el Tribunal de Apelaciones ordenó la celebración de una nueva vista administrativa.[7]

---

[6] Adviértase que la fecha de efectividad entre los avisos de cancelación del contrato de arrendamiento para realojo enviados al señor Payano y al señor Cruz eran diferentes.

[7] Véase, Héctor Cruz Quiñones v. SP Management, Corp, y otros., KLRA2016-1031. La persona que fungió como Oficial Examinador de la AVP, Lissette Maynard, era la Directora de Ocupación de la compañía SP Management. Entiéndase, la oficial examinadora era empleada de la compañía que dio

Así las cosas, el 28 de diciembre de 2016 el señor Payano presentó una demanda de desahucio y cobro de dinero contra el señor Cruz, por sí y en representación de la Sociedad Legal de Gananciales que compone con su esposa Hilda Pagán Navarro, y contra SP Management, por estos continuar viviendo en su propiedad sin un contrato vigente. Solicitó el desahucio del señor Cruz y su familia de la vivienda arrendada, así como el pago de $5,900.00 por los cánones de arrendamiento adeudados y cargos por mora, a ser pagados solidariamente por los demandados.[8] Alegó que el señor Cruz ocupó su propiedad sin contrato y sin pagar canon de arrendamiento desde el 30 de junio de 2016 a diciembre de 2016. Además, adujo que requirió el pago de la renta en múltiples ocasiones, pero sus intentos fueron infructuosos.

Por su parte, el señor Cruz presentó una *Solicitud de Desestimación o, en la Alternativa, de Conversión a Pleito Ordinario* y *Paralización de los Procedimientos*. En esta, arguyó que la vigencia del contrato de arrendamiento para realojo estaba en controversia dado que su cancelación se había impugnado en el foro administrativo pertinente. Sostuvo que, en ese momento, la reclamación no había culminado, por tanto, procedía paralizar la demanda de desahucio y cobro de dinero hasta que se agotaran los remedios administrativos.

---

por cancelado el contrato en controversia. Por tal razón, el Tribunal de Apelaciones entendió que esta no era una juzgadora imparcial.
[8] El señor Payano reclamó el pago de $1,500.00 por los meses de julio, agosto, septiembre, octubre, noviembre y diciembre de 2016, (mes que incoó la demanda) para un total de $5,750.00. Además, reclamó el pago de $240.00 por concepto de pago tardío correspondiente a dichos meses.

Asimismo, el señor Cruz señaló que el *Reglamento sobre las políticas de admisión y ocupación continuada en los residenciales públicos del estado Libre Asociado de Puerto Rico*, Reglamento Núm. 8624 del 31 de julio de 2015, ("Reglamento 8624") reconoce una serie de derechos a los y las residentes de vivienda pública y establece que no procede el desahucio de los y las residentes sino hasta que la resolución sobre la cancelación de contrato de arrendamiento advenga final y firme. Sostuvo que, mediante el contrato de arrendamiento para realojo se le reconoció y preservó la condición de residente de vivienda pública al señor Cruz y su familia. En otras palabras, argumentó que no existía diferencia entre ser un residente de vivienda pública que ocupa una vivienda en un residencial público y un residente de vivienda pública que ocupa una residencia en el mercado privado.

Adicionalmente, el señor Cruz alegó que procedía desestimar la demanda por falta de parte indispensable puesto que el demandante no incluyó a la AVP como demandada en el pleito. En específico, argumentó que la AVP fue quien se obligó con el señor Payano bajo el contrato de arrendamiento de realojo, por tanto, su ausencia en el pleito era medular. Además, sostuvo que dado a que el señor Cruz y su familia son residentes de vivienda pública, y ostentan un contrato vigente con la AVP, esta es la entidad que debe acreditar el cumplimiento con las disposiciones del Reglamento 8624, supra, relativas al procedimiento de intención de cancelación

de contrato y de desahucio. Por tal razón, era necesario traerla al pleito.

En la alternativa, el señor Cruz adujo que procedía convertir la acción de desahucio al trámite ordinario. Finalmente, respecto a la acción de cobro, alegó que, como arrendataria, la AVP y SP Management eran los responsables de pagar los cánones de arrendamiento que el señor Payano reclamó. Incluso, sostuvo que pagó su parte del canon de arrendamiento desde el mes de agosto de 2016, cuando se canceló el contrato de arrendamiento. No obstante, tanto SP Management como la AVP se negaron a recibir sus pagos.[9]

Por su parte, SP Management presentó una solicitud de desestimación, predicada en que la demanda no exponía una reclamación que justificara algún remedio.

El 1 de febrero de 2017, las partes comparecieron a una vista ante el foro primario. En esta, el tribunal paralizó la acción de desahucio y ordenó al señor Cruz a pagar mensualmente la cantidad de $600, mediante su consignación en la Unidad de Cuentas del Tribunal. Además, le ordenó a pagar mensualmente la cantidad de $300, como abono a la alegada deuda de $4,800 que tenía con el señor Payano.[10] Asimismo, y como parte de la vista del 1 de febrero

---

[9] Véase, Apéndice Anejo I, pág. 102.

[10] La *Sentencia Parcial* dispuso que el señor Cruz y su familia debía pagar $600.00 por los meses de julio, agosto, septiembre, octubre, noviembre, diciembre de 2016, así como para los meses de enero y febrero de 2017 (mes en que fue dictada la *Sentencia Parcial*), para un total de $4,800.00. Ello, conforme a la cantidad que bajo el contrato de arrendamiento para realojo debía pagar el señor Cruz a la AVP.

de 2017, el foro primario le concedió a la representación legal del señor Cruz un término de treinta (30) días para que "realice las gestiones con la [AVP], con relación a la deuda de ellos con el señor Payano".[11] Conforme a ello, el foro primario ordenó —mediante la Sentencia Parcial— "al Secretario de la [AVP] atender a la [representante legal del señor Cruz] y su reclamo".[12]

Luego de celebrar una vista final, el 15 de marzo de 2017, el Tribunal de Primera Instancia notificó una *Sentencia Final* mediante la cual declaró con lugar la demanda. De esa forma, (1) ordenó el desalojo del señor Cruz y su familia de la vivienda del señor Payano, y (2) le condenó a pagar cinco mil cuatrocientos dólares ($5,400) por concepto de los cánones correspondientes a los meses en los cuales estuvo viviendo en la propiedad del señor Payano sin contrato vigente, a saber: desde julio de 2016 a marzo de 2017, a razón de seiscientos dólares ($600) mensuales.

Inconforme con el dictamen del foro primario, el señor Cruz recurrió al Tribunal de Apelaciones mediante apelación. En síntesis, señaló los mismos argumentos que en su solicitud de desestimación ante el foro primario. Añadió que el Tribunal de Primera Instancia no celebró una vista en su fondo antes de emitir el dictamen recurrido, lo cual violentó su derecho a un debido proceso de ley. Por su parte, el señor Payano presentó un alegato en oposición. En este, alegó que

---

[11] Apéndice, pág. 106.
[12] Id.

el señor Cruz no tiene legitimación activa para apelar. Ello, en virtud de que el contrato de arrendamiento para realojo no estaba vigente, razón por la cual no podía alegar que sufrió algún daño palpable.[13] SP Management no se expresó, pese a que se ordenó comparecer.[14]

Tras justipreciar los planteamientos de las partes, el 7 de agosto de 2017 el foro apelativo confirmó el dictamen del Tribunal de Primera Instancia. Determinó que, una vez la AVP canceló el contrato de arrendamiento para realojo, el señor Cruz estaba obligado a abandonar la propiedad, y que, al no hacerlo, el señor Payano tenía el derecho de acudir ante un foro judicial para solicitar el desahucio. Además, estimó que, conforme al contrato de arrendamiento para realojo, el señor Cruz estaba obligado a pagar la totalidad de la renta. Ello debido a que el contrato de arrendamiento para realojo establece que, una vez entablada la acción de desahucio por parte de la AVP, el residente estaría obligado a pagar la totalidad de la renta de mercado privado a la parte arrendadora. Asimismo, el Tribunal de Apelaciones entendió que el foro primario no erró al denegar la conversión del procedimiento sumario de desahucio a uno

---

[13] Específicamente, explicó que el señor Cruz "lleva casi un (1) año residiendo en una propiedad sin cumplir con sus obligaciones según pactadas [en el contrato de arrendamiento para realojo], por lo que carece de un reclamo legítimo sobre la ocupación de un apartamento, especialmente ante su legítimo dueño y la realidad es que no existe en este momento un contrato que le faculte la posesión de dicha unidad". Apéndice, pág. 125.
[14] Cabe destacar que, el foro primario le anotó la rebeldía a SP Management por su incomparecencia. Véase, Minuta de 1 de febrero de 2017, Apéndice pág. 148.

ordinario puesto que ello estaba en el sano ejercicio de su discreción. Finalmente, esgrimió que la AVP no era parte indispensable debido a que la acción de desahucio no cuestiona la validez de los términos y condiciones del contrato de arrendamiento para realojo, ni el incumplimiento de este por parte de la AVP. Por tanto, no encontró de qué manera los intereses de la AVP podrían verse afectados con la decisión del foro primario de ordenar el desalojo del señor Cruz y su familia de la propiedad del señor Payano.

Aún en desacuerdo, el 11 de septiembre de 2017 el señor Cruz presentó un recurso de apelación ante este Tribunal. En esencia, reprodujo los argumentos que esbozó ante los foros inferiores. Señaló que, la presencia de AVP es fundamental para responder a sus señalamientos y los del señor Payano. En específico, fundamentó que:

> en atención a que las apelantes son residentes de vivienda pública y ostentan un contrato de vivienda pública vigente con AVP, dicha entidad, al igual que SP, es parte indispensable en este pleito, puesto que esta tiene que acreditar el cumplimiento con las disposiciones del Reglamento 8624 relativas al procedimiento de intención de cancelación de contrato, el cual, como se discutió, es precursor a las acciones de desahucio. Además, corresponde a la AVP, como arrendataria, pagar los cánones de arrendamiento a la parte apelada hasta tanto no concluya el proceso administrativo al que tienen derecho las apelantes. Apelación, pág. 24.

En atención a lo anterior, acogimos el recurso de apelación. Así, el 30 de julio de 2018 el señor Cruz presentó su alegato. Nos informó que, cansados de la situación angustiosa que estaban enfrentando tanto él y su familia, ya

no ocupaban la propiedad del señor Payano. No obstante, alegó que el caso no era académico puesto que existían controversias vivas que debíamos resolver. Por su parte, el señor Payano no presentó alegato.

Así las cosas, el 4 de septiembre de 2019 emitimos una Resolución para que el señor Cruz nos informara cuál era el estado de los procedimientos a nivel administrativo. El señor Cruz compareció y explicó que, luego de que el Tribunal de Apelaciones revocó la resolución de la AVP, mediante la cual canceló su contrato de vivienda pública, la vista administrativa nueva no se realizó. En cambio, la AVP llevó a cabo "un proceso informal de reuniones con residentes del antiguo complejo Las Gladiolas para realojarlos".[15] Por otra parte, el 10 de octubre de 2019 emitimos otra Resolución mediante la cual le concedimos un término al señor Cruz para que mostrara causa por la cual no debíamos desestimar el recurso por académico. El señor Cruz y su esposa comparecieron y argumentaron que el recurso no era académico. Arguyeron que, aunque desalojaron la residencia objeto de la acción de desahucio, continuaba viva la controversia sobre la imposición del pago de los cánones de arrendamiento, la cual a su vez guardaba relación con el argumento sobre parte indispensable y sobre la falta de celebración de una vista en su fondo.

**II.**

---

[15] *Moción en cumplimiento de orden,* pág. 1.

**A. *Jurisdicción***

La jurisdicción es "el poder o la autoridad que posee un tribunal para considerar y decidir un caso o controversia". Allied Management Group, Inc. v. Oriental Bank, 204 DPR 374, 385 (2020); González v. Mayagüez Resort & Casino, 176 DPR 848, 854 (2009). En virtud de nuestra Constitución, los tribunales de Puerto Rico son tribunales de jurisdicción general que tienen autoridad para entender en cualquier causa de acción que presente una controversia propia para la adjudicación. LPRA, Tomo 1, ed. 2016, pág. 354. Véase, Beltrán Cintrón v. ELA, 204 DPR 89, 101 (2020); Junta Dir. Cond. Montebello v. Fernández, 136 DPR 223, 230 (1994). Ahora bien, hay ciertos casos en los que los tribunales están impedidos de ejercer su poder de adjudicación. Es por ello que, los tribunales deben ser celosos guardianes de su jurisdicción, por lo que están obligados a considerarla aún en ausencia de señalamiento de las partes. JMG Inv., Inc. v. ELA, 203 DPR 708, 714 (2019); Constructora Estelar v. Aut. Edif. Pub., 183 DPR 1 (2011).

La falta de jurisdicción incide directamente sobre el poder que tiene el tribunal para adjudicar una controversia. Allied Management Group, Inc. v. Oriental Bank, supra, pág. 386; Peerles Oil v. Torres Pérez, Inc., 186 DPR 239, 249-250 (2012).

La ausencia de jurisdicción tiene efectos severos en la facultad adjudicativa de los tribunales. La falta de jurisdicción es insubsanable, no la pueden conferir

voluntariamente las partes, conlleva la nulidad de los dictámenes emitidos, y puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*. Allied Management Group, Inc. v. Oriental Bank, supra, pág. 386. La autoridad para adjudicar es uno de los elementos más importantes en nuestro ordenamiento jurídico. Es por eso que se les impone a los tribunales el ineludible deber de auscultar su propia jurisdicción y se propicia a los tribunales apelativos a examinar la jurisdicción del foro de donde procede el recurso ante su consideración. Íd.

Una vez un tribunal entiende que no tiene jurisdicción solo tiene autoridad para así declararlo y, por consiguiente, desestimar el recurso. Torres Alvarado v. Madera Atiles, 202 DPR 495, 501 (2019); García Hernández v. Hormigonera Mayagüezana, Inc., 172 DPR 1, 7 (2007).

### B. Parte Indispensable

Es una exigencia del debido proceso de ley acumular a todas las partes que tengan un interés común en un pleito. Ello responde a dos principios básicos: (1) la protección constitucional que impide que una persona sea privada de la libertad y propiedad sin un debido proceso de ley, y (2) la necesidad de que el dictamen judicial que en su día se emita esté completo para las personas que ya son partes en el pleito. López García v. López García, 200 DPR 50, 64 (2018); Cepeda Torres v. García Ortiz, 132 DPR 698, 704 (1993). Así, la Regla 16.1 de las de Procedimiento Civil establece que

"[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia, se harán partes y se acumularán como demandantes o demandadas, según corresponda". 32 LPRA Ap. V, R. 16.1.

Una parte indispensable es aquella de la que no se puede prescindir, pues, sin su presencia las cuestiones litigiosas no pueden ser adjudicadas correctamente, ya que sus derechos quedarían afectados por una determinación judicial. RPR & BJJ Ex Parte, 2021 TSPR 83, pág. 8 (2021); López García v. López García, supra; Deliz et als. v. Igartúa et als., 158 DPR 403, 432 (2003).

Es menester señalar que el "interés común" al que hace referencia la Regla 16.1 de las de Procedimiento Civil, supra, no es cualquier interés sino aquel real e inmediato. No se puede tratar de meras especulaciones o de un interés futuro. RPR & BJJ Ex Parte, supra, pág. 8; Allied Management Group, Inc., supra, pág. 389; López García v. López García, supra, pág. 64. Ante ello, el "interés común" debe ser evaluado a la luz de las circunstancias particulares de cada caso y no es un asunto para dilucidar de forma automatizada, pues, requiere realizar una evaluación de varios factores. Entre ellos, el tiempo, lugar, modo, alegaciones, prueba, clase de derechos, intereses en conflicto, resultado y formalidad que se presenten. RPR & BJJ Ex Parte, supra, pág. 10; López García v. López García, supra; Romero v. S.L.G., 164 DPR 721, 732 (2005). El producto de ese análisis es determinar si el tribunal puede hacer justicia y conceder

un remedio final y completo a las partes presentes **sin afectar los intereses de la parte ausente**. RPR & BJJ Ex Parte, supra, pág. 10; Pérez v. Morales Rosado, supra; J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Pubs. JTS, 2011, T. II, pág. 695.

La omisión de una parte indispensable es motivo para desestimar una causa de acción, pero ello no es óbice para que el Tribunal, a instancia propia o a solicitud de parte, conceda la oportunidad de traer al pleito a la parte ausente. Meléndez v. ELA, 113 DPR 811 (1983); J.A. Cuevas Segarra, *op. cit.*, pág. 694. Ahora bien, la desestimación que se produce por no haber acumulado una parte indispensable no tiene el efecto de una adjudicación en los méritos. VS PR, LLC v. Drift-Wind, Inc., 2021 TSPR 76, pág. 9 (2021); Banco de la Vivienda de Puerto Rico v. Carlo Ortiz, 130 DPR 730, 738 (1992). La falta de parte indispensable en un pleito es un interés tan fundamental, que constituye una defensa irrenunciable que puede presentarse en cualquier momento durante el proceso. **En ausencia de parte indispensable, el tribunal carece de jurisdicción y la sentencia que se emita sin su presencia sería nula**. Watchtower Bible v. Mun. Dorado I, 192 DPR 73, 118 (2014); Unisys v. Ramallo Brothers, 128 DPR 842, 859 (1991).

Incluso, los foros apelativos, si así lo entienden, pueden —y deben— levantarlo a instancia propia, debido a que esta incide sobre la jurisdicción del tribunal. Watchtower Bible v. Mun. Dorado I, supra, pág. 118.

### C. Teoría General de los Contratos

El Código Civil de 1930, aplicable a los hechos de este caso, dispone que las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos en que intervenga cualquier género de culpa o negligencia. Artículo 1042 del Código Civil, 31 LPRA ante sec. 2992. Aquellas obligaciones que nacen de un contrato tienen fuerza de ley entre las partes contratantes, y deben cumplirse a tenor de este. Artículo 1044 del Código Civil, 31 LPRA ante sec. 2994. En nuestro ordenamiento jurídico, las obligaciones son vínculos jurídicos entre dos partes, una parte acreedora y otra parte deudora, donde este último tiene el deber de cumplir con la prestación que consiste en dar, hacer o no hacer alguna cosa en beneficio de la primera parte. Art. 1041 del Código Civil, 31 LPRA sec. ante 2991. Esa obligación de cumplir con lo pactado se fundamenta en el principio de la buena fe, el cual exige no defraudar la confianza que otro ha puesto en una promesa o conducta. BPPR v. Sunc. Talavera, 174 DPR 686, 693 (2008); Unisys v. Ramallo Brothers, supra.

En Puerto Rico rige el principio de libertad de contratación. Así, los y las contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral ni al orden público. Art. 1207 del Código Civil, 31 LPRA ante sec. 3372. Sin embargo, los contratos, más allá

de expresar y reflejar la voluntad y libertad de la persona, son también instrumentos de justicia y de interés social.

Cónsono con lo anterior, los contratos en los que el Estado es parte están revestidos de un alto interés público, pues es el erario el que se compromete. Sobre todo,

> no podemos ignorar que en la contratación por el Estado, la sana y recta administración de los fondos del Pueblo está revestida del más alto interés público, y que todo organismo gubernamental está obligado a observar cabalmente la esencia del principio consagrado [en la Constitución del Estado Libre Asociado de Puerto Rico]. De Jesús González v. A.C., 148 DPR 255, 268 (1999).

En Rodríguez v. Municipio, 75 DPR 479, 494 (1953) este Tribunal expresó que "[c]uando un gobierno contrata con una persona particular, el contrato hay que interpretarlo como si se tratara de un contrato entre dos particulares". Asimismo, en Zequeira v. CRUV, 83 DPR 878 (1961) y en Plan de Bienestar de Salud v. Alcalde Cabo Rojo, 114 DPR 697 (1983) se reiteró la noción de que el Estado se encuentra en similar posición que personas particulares en materia de contratación. No obstante, académicos rechazan esa posición automatizada. Así, el profesor Michel J. Godreau Robles, destaca que:

> [p]uede ser que en determinados casos la justicia requiera que la solución de una controversia patrimonial en la que está involucrado el Estado como parte contratante se estructure en forma similar a las soluciones que ofrece el Código Civil. En otros, las peculiares funciones del Estado moderno, como depositario de un patrimonio público, administrado por unas personas que dispendian riqueza aunque no les pertenece -pues

los funcionarios públicos no son dueños del patrimonio objeto de la contratación-, la justicia podría requerir soluciones distintas a las pautadas en el Código [Civil]. M.J. Godreau, *Un Esquema Para el Análisis de Problemas de Derecho Civil Patrimonial*, 55 Rev. Jur. U.P.R. 9, 30 (1986).

Así, en <u>Corporación de Renovación Urbana y Vivienda De Puerto Rico v. Peña Ubiles</u>, 95 DPR 311 (1967) se estableció que la Corporación de Renovación Urbana y Vivienda de Puerto Rico, estaba sujeta, como arrendadora, a los requisitos del debido proceso de ley por otorgar un contrato de arrendamiento con un ciudadano particular, sobre una vivienda en una urbanización pública, financiado con fondos federales y fondos estatales. Por otro parte, el Estado tiene una obligación de cumplir con lo pactado independientemente de los cambios en la administración del gobierno. <u>Municipio de Ponce v. Autoridad de Carreteras</u>, 153 DPR 1, 41 (2001).

### D. *Contrato de Arrendamiento*

En un contrato de arrendamiento de cosas el arrendador o la arrendadora se obliga a dar al arrendatario o arrendataria el goce y uso de una cosa por tiempo determinado y precio cierto. Art. 1433 del Código Civil de Puerto Rico, 31 LPRA ante sec. 4012. Así, en un contrato de arrendamiento las partes —el arrendador o la arrendadora y el arrendatario o la arrendataria— se obligan recíprocamente. Arts. 1444-45 del Código Civil, 31 LPRA ante secs. 4051-52. Al perfeccionarse el contrato de arrendamiento surgen las obligaciones bilaterales que el Código Civil les impone a

una y a otra parte. En consecuencia, estas se obligan no sólo al cumplimiento de lo expresamente pactado, sino también a todas las consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley. Art. 1210 del Código Civil, 31 LPRA ante sec. 3375; Demeter Int'l v. Srio. Hacienda, 199 DPR 706, 727 (2018); BPPR v. Sucn. Talavera, supra, en la pág. 693.

De ordinario, las dos partes que intervienen en un contrato de arrendamiento son el arrendador o la arrendadora —quien se obliga a ceder el uso de la cosa— y el arrendatario o la arrendataria —quien obtiene el uso de la cosa arrendada. José R. Vélez Torres, *Los contratos*, San Juan, Puerto Rico, 1987, pág. 356.

Entre las obligaciones del arrendador o la arrendadora está entregar al arrendatario la cosa objeto del contrato y mantener al arrendatario o a la arrendataria en el goce pacífico del arrendamiento por todo el tiempo del contrato. Art. 1444 del Código Civil, 31 LPRA ante sec. 4051.

Por otro lado, es responsabilidad del arrendatario o la arrendataria pagar el precio del arrendamiento en los términos convenidos y usar la cosa arrendada como una persona prudente, razonable y diligente, destinándola al uso pactado. Art. 1445 del Código Civil 1930, 31 LPRA ante sec. 4052.

Si el arrendatario o la arrendataria incumple con sus obligaciones, el arrendador o la arrendadora podrá pedir la rescisión del contrato y la indemnización de daños y

perjuicios, o sólo esto último y dejar el contrato subsistente. Art. 1446 del Código Civil, 31 LPRA ante sec. 4053.

Finalmente, destaco la norma reiterada del derecho contractual que establece que tanto la validez, como el cumplimiento de los contratos no pueden dejarse al arbitrio de uno de los contratantes. Art. 1208 del Código Civil, 31 LPRA ante sec. 3373.

**III.**

El señor Cruz alegó que procedía la revocación de la sentencia apelada, entre otras razones, porque la AVP es una parte indispensable sin la cual no se podía dictar sentencia. Por su parte, el señor Payano niega que la AVP fuera una parte indispensable debido a que no se estaban afectando sus prerrogativas. Así, reclamó a los demandados el pago solidario de los cánones de arrendamiento adeudados. En la demanda que instó el señor Payano, este solicitó que tanto SP Management —como el administrador de Las Gladiolas— y el señor Cruz respondieran solidariamente por el pago de los meses que supuestamente le adeudaban. Además, alegó que procedía la acción de desahucio y el cobro de dinero debido a que el señor Cruz y su familia permanecieron en la propiedad arrendada sin pagar los cánones de arrendamiento.[16]

---

[16] Mediante escrito de 30 de julio de 2018 el señor Cruz nos informó que ya no estaban residiendo en la propiedad del señor Payano. Ello, tornó académico las alegaciones sobre la acción de desahucio. En consecuencia, estas no estarán bajo nuestro de análisis.

Para resolver si, en efecto, la AVP era una parte indispensable en la acción de cobro de dinero que instó el señor Payano contra el señor Cruz es necesario analizar la naturaleza del contrato de arrendamiento de realojo, así como, el rol de cada uno de los tres otorgantes. Como norma general, al contrato de arrendamiento comparecen la parte arrendadora y la parte la arrendataria. Ahora bien, existen ocasiones en las cuales, por la naturaleza de las obligaciones, comparece una tercera parte. Ejemplo de ello, es el contrato de arrendamiento para realojo. En estos casos, el arrendatario cede la posesión de la cosa arrendada a la tercera persona, bajo las cláusulas y condiciones estipuladas en el contrato de arrendamiento.[17]

Como vimos, al contrato de arrendamiento de realojo comparecieron (1) el señor Payano como parte arrendadora, (2) la AVP como parte arrendataria, y (3) el señor Cruz como residente de la propiedad arrendada. A diferencia de otros contratos de arrendamiento, este acuerdo tripartita tuvo una naturaleza *sui generis* que respondió a la necesidad de realojar a múltiples residentes de vivienda pública en viviendas privadas.

---

[17] Destaco que, aunque por su esencia podría ser parecido al contrato de subarriendo, no nos encontramos ante tal negocio jurídico. En una relación de subarriendo, el contrato de subarriendo tiene su base en el contrato de arrendamiento original, que subsiste a pesar de que el arrendatario cedió la posesión de la cosa a otra persona. Véase, J.R. Vélez Torres, *op. cit.*, pág. 378. Mientras, en la relación tripartita *a quo*, se trata de una relación *sui generis* que tiene su base en el interés público que generan las viviendas de interés social.

Según los términos del contrato, la AVP como arrendataria es quien tenía la obligación de pagar el canon mensual al señor Payano y, a su vez, el señor Cruz tenía la obligación de pagarle directo a la AVP su aportación mensual de $600.00. Además, era la AVP la encargada de realojar temporeramente a los residentes en otros residenciales o en el mercado privado y la obligada a notificar la cancelación del contrato.

Por lo anterior, es inevitable concluir que la AVP es parte indispensable en la acción de cobro de dinero que instó el señor Payano debido a que compareció en el "Contrato de Arrendamiento para Realojo en el Mercado Privado" como la parte arrendataria y SP Management como su representante. Además, ante una acción de desahucio y cobro de dinero, no cabe duda de que AVP es una parte indispensable debido a que es la arrendataria del inmueble y la parte obligada a pagar el canon mensual de arrendamiento. Su comparecencia es necesaria para evitar múltiples pleitos y lograr un remedio efectivo y completo en el caso. Asimismo, según la teoría de los contratos, "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos". Art. 1044 del Código Civil, 31 LPRA ante sec. 2994. Por ello, del contrato de arrendamiento para el realojo se desprende que el señor Cruz debía dar su aportación de $617 a la AVP y, por su parte, **la AVP era quien pagaría directamente al señor Payano**. Por ende, la obligación de pagar el canon de

arrendamiento en su totalidad —incluida la aportación del señor Cruz— era de la AVP. Así, al ser la AVP —como arrendataria— a quien correspondía pagar la totalidad del canon de arrendamiento— según pactados en el contrato de arrendamiento para realojo— el señor Payano **debía incluir a la AVP en su acción en cobro de dinero**, pues era a este a quien correspondía dirigir la causa de acción.

La Sentencia Final dictada por el foro primario condenó al señor Cruz y su familia a pagar cinco mil cuatrocientos dólares ($5,400) por concepto de los cánones correspondientes a los meses en los cuales estuvo viviendo en la propiedad del señor Payano a razón de seiscientos dólares ($600) mensuales desde julio 2016 a marzo 2017. Esta determinación fue errada toda vez que le correspondía al señor Cruz pagar la aportación acordada a la AVP y no directamente al señor Payano. Al así hacerlo, al señor Cruz y su familia se le violentaron ciertos derechos como residentes de vivienda pública, garantizados en el Reglamento 8624, supra.

Es menester destacar que, el contrato de arrendamiento entre la AVP y un ciudadano o una ciudadana no es un mero contrato de arrendamiento de cosas. Este está revestido de un alto interés público. La legislación aplicable a la vivienda pública enfatiza que las partes en el contrato tienen la obligación de cumplir con la reglamentación que establece el Departamento de Vivienda y Desarrollo Urbano

("HUD", por sus siglas en inglés) y de la AVP.[18]

Como si fuera poco, el foro primario **ordenó** al Secretario de la AVP —mediante la *Sentencia Parcial*— a reunirse con la representante legal del señor Cruz.[19] En específico, el foro primario concedió un término de treinta (30) días a la representación legal del señor Cruz "en espera que realice las gestiones con la [AVP], con relación a la deuda de ellos con el señor Payano".[20] Tal proceder es erróneo debido a que  este **no puede ordenar a una parte de la cual no tiene jurisdicción a realizar acción alguna.** Ello demuestra que, el foro primario entendía pertinente la comparecencia de la AVP para dilucidar la controversia. Así, la comparecencia de la AVP hubiera evitado las demoras innecesarias en los procedimientos y hubiera provisto una solución efectiva y justa a esta controversia.

A cinco años de entablada la demanda, no queda más que desestimar el pleito por falta de parte indispensable. El debido proceso de ley exige que se le dé a la AVP su día en corte para que esta pueda defenderse ya que es esta la obligada a pagar el canon mensual de arrendamiento al señor Payano. Ello demuestra la necesidad de que en este caso compareciera la AVP como parte indispensable.

---

[18] En específico, las partes de un contrato de arrendamiento subvencionado por el Estado están obligadas al cumplimiento con el Reglamento Núm. 8624 del 31 de julio de 2015.
[19] Íd.
[20] Apéndice, pág. 106.

**IV.**

Quien comparece al contrato como parte arrendataria es parte indispensable en un pleito de cobro de dinero por canon de arrendamiento que surge de dicho vínculo jurídico obligacional. Así, la falta de parte indispensable obliga a concluir que la sentencia apelada es nula. Por consiguiente, los dictámenes de los foros inferiores son nulos y conlleva la desestimación de la demanda sin perjuicio.

**V.**

Los contratos de arrendamiento de vivienda pública, no se pueden tomar livianamente. En Puerto Rico, la historia sobre el derecho a la vivienda —y la vivienda en sí— está sumida en la desigualdad y el discrimen.[21] He ahí la importancia de las viviendas de interés social en nuestra sociedad.

Teniendo en cuenta la situación de los residentes de las antiguas torres de Las Gladiolas y la importancia social de las viviendas públicas, no se debió haber impuesto el cobro del canon de arrendamiento al señor Cruz y su familia de forma automatizada. Al así hacerlo, el señor Cruz y su familia se vieron obligados a despojar, por **segunda vez**, el lugar al que llamaban "casa".

Maite D. Oronoz Rodríguez
Jueza Presidenta

---

[21] É. Fontánez Torres, *Casa, Suelo y Título: Vivienda e informalidad en Puerto Rico*, San Juan, Ediciones Laberinto, 2020.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Elvis Payano<br><br>Apelado<br><br>v.<br><br>Héctor Cruz, por sí y en representación de la Sociedad Legal de Bienes Gananciales que compone con su esposa Hilda Pagán Navarro<br><br>Apelante<br><br>SP Management, Corp.<br><br>Apelado | AC-2017-0089 | Apelación |

Opinión de conformidad emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ, a la cual se une el Juez Asociado Señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 23 de junio de 2022.

La Sentencia emitida por este Tribunal procura remediar los efectos de un largo y atropellado camino recorrido por los peticionarios. Entre otros efectos, hoy acertadamente descartamos limitar retroactivamente el término para solicitar la revisión de una determinación del Tribunal de Apelaciones en el contexto de desahucios. Estoy conforme con este curso de acción porque un razonamiento contrario carecería de fundamentos jurídicos que lo sustente y, además, sería gravemente lesivo al acceso a la justicia.

Ahora bien, emito esta Opinión de conformidad para abundar y fundamentar en Derecho. Máxime, ante la peligrosa

y recurrente práctica de desahuciar a las personas de escasos recursos económicos que residen en viviendas públicas al margen del debido proceso de ley. Frente a esta realidad innegable y sus consecuencias jurídicas, urgía la intervención de este Tribunal a fines de proteger el interés social que enmarca a los programas públicos de vivienda.

A continuación, expongo brevemente el tracto procesal de la controversia que nos ocupa.

# I

El Sr. Héctor Cruz y su familia (peticionarios) vivían en el complejo de vivienda pública Las Gladiolas. En vista de que el Estado decidió demoler el mismo, la Autoridad de Vivienda Pública de Puerto Rico (AVP) tuvo la responsabilidad de realojar a los peticionarios. Para ello, la AVP los reubicó en la propiedad privada del Sr. Elvis Payano (señor Payano), con quien suscribió un contrato de arrendamiento. En este, las partes acordaron que la **AVP arrendaría** la propiedad del señor Payano, que la **AVP estaría encargada de pagar las rentas mensuales y que los peticionarios pagarían directamente a la AVP un canon de renta reducido**, ajustado a su necesidad económica. Entre varios asuntos, en el contrato se pactó que, de cancelarse el mismo, la AVP era la entidad encargada de solicitar el desahucio ante el Tribunal de Primera Instancia.

Sin embargo, previo a la fecha del vencimiento del contrato, la AVP lo canceló. Ello, debido a que presuntamente los peticionarios se negaron a un traslado

sin justa causa. A raíz de ello, los peticionarios impugnaron la decisión en un procedimiento administrativo ante la propia AVP, la cual emitió una resolución confirmando su determinación de cancelar el contrato y de despojar a los peticionarios de la vivienda alquilada.

Inconformes, los peticionarios acudieron al Tribunal de Apelaciones. Tras ello, el foro apelativo intermedio revocó la resolución, pues concluyó que el procedimiento administrativo violentó el debido proceso de ley de los peticionarios al adjudicarse mediante un juzgador parcializado.

Debido a lo anterior, los peticionarios comenzaron nuevamente el procedimiento administrativo para impugnar la cancelación de su contrato por parte de la AVP. A pesar de ello, el señor Payano, como dueño de la propiedad ocupada por los peticionarios, acudió paralelamente al Tribunal de Primera Instancia y solicitó el desahucio sumario por falta de pago. **No obstante, no se incluyó a la AVP como parte indispensable, la cual era la entidad responsable de pagar las rentas mensuales al arrendador y la que, según el contrato suscrito por todas las partes, era el ente legitimado para instar un pleito de desahucio en contra de los peticionarios.**

Por su parte, los peticionarios solicitaron la paralización del pleito de desahucio hasta tanto se adjudicara el procedimiento administrativo. Asimismo, arguyeron que el caso debía ser desestimado, pues la AVP

era parte indispensable de la controversia. En la alternativa, sostuvieron que el desahucio sumario debía tornarse en ordinario debido a la complejidad y alto interés social de la controversia. Sin embargo, el Tribunal de Primera Instancia declaró ha lugar la demanda de desahucio e impuso a los peticionarios el pago de $5,400.00 en concepto de cánones de arrendamiento adeudados. El Tribunal de Apelaciones confirmó la determinación del foro primario.

Oportunamente, y dentro del término de treinta (30) días, los peticionarios acudieron ante este Tribunal y correctamente alegaron que fueron desahuciados y despojados de su vivienda de forma atropellada e ilegal. Debido a lo anterior, el 23 de febrero de 2018, decidimos expedir el recurso ante nuestra consideración. Sin embargo, posteriormente, este Tribunal estimó necesario conocer el estado de los procedimientos administrativos en controversia, por lo que ordenó a los peticionarios a notificarnos sobre ello.

Nuevamente, comparecieron los peticionarios y notificaron que la AVP nunca celebró el procedimiento administrativo correspondiente y que meramente conllevó unas reuniones informales con los peticionarios y otras familias desalojadas. A raíz de ello, alegaron que "cansados de tanto sufrimiento, dolor e injusticia", se vieron forzados a arrendar una residencia con sus propios fondos.

## II

## A.

La Ley Orgánica de la Administración de Vivienda Pública de Puerto Rico, Ley Núm. 66 de 17 de agosto de 1989, 17 LPRA sec. 1001 et seq., creó la AVP con el propósito de proveer vivienda pública adecuada y de calidad a las personas indigentes. Específicamente, la AVP es la entidad responsable de administrar eficientemente los residenciales públicos y de realojar a las personas residentes de estos cuando ello sea necesario.

En esa encomienda, la AVP tiene la facultad de cancelar contratos de arrendamiento de personas beneficiarias de vivienda pública. Sin embargo, al así hacerlo, la AVP está obligada a velar por el cumplimiento estricto de un debido proceso de ley. Ello, pues la Corte Suprema de los Estados Unidos ha resuelto que **las personas de escasos recursos económicos que residen en vivienda pública tienen un interés propietario, por lo que la cancelación de esos beneficios activa el debido proceso de ley en su vertiente procesal**. Goldberg v. Kelly, 397 US 254, 264-265 (1970). Específicamente, la Corte Suprema concluyó lo siguiente:

> [T]he interest of the eligible recipient in uninterrupted receipt of public assistance, coupled with the State's interest that his payments not be erroneously terminated, clearly outweighs the State's competing concern to prevent any increase in its fiscal and administrative burdens. As the District Court correctly concluded, **"(t)he stakes are simply too high for the welfare recipient, and the possibility for honest error or irritable misjudgment too great, to allow termination of aid without giving the recipient a chance, if he**

**so desires, to be fully informed of the case against him so that he may contest its basis and produce evidence in rebuttal".** (Negrillas suplidas). Íd., pág. 266 (citas omitidas).

En ese sentido, este Tribunal ha razonado igualmente que estas exigencias mínimas de un debido proceso de ley "cuestan muy poco al Estado, especialmente al compararlas con las garantías que ofrece para evitar una privación arbitraria y caprichosa de un derecho formal". Pueblo v. Reyes Morán, 123 DPR 786, 816 (1989).

A la luz de estos postulados, el Reglamento sobre las Políticas de Admisión y Ocupación Continuada en los Residenciales Públicos del Estado Libre Asociado de Puerto Rico, Reglamento Núm. 8624, 31 de julio de 2015, reconoce el derecho de las personas perjudicadas a impugnar la decisión del Estado de revocar su derecho a residir en vivienda pública. En esos casos, la Sección 18.2.1(i) permite que, una vez notificada la intención de cancelar el contrato, se solicite una vista. Íd. Durante la tramitación de este procedimiento administrativo, **las personas beneficiarias tienen derecho a continuar ocupando la vivienda pública.** Íd., Sección. 18.2.2.

A su vez, la Sección 19.2.3 (viii-ix) dispone que, en ese procedimiento administrativo, la AVP tiene la obligación de salvaguardar ciertas garantías mínimas del debido proceso de ley, a saber, la oportunidad de obtener los documentos pertinentes, la presentación de evidencia, el derecho a que se celebre una vista privada y el derecho a una adjudicación imparcial y conforme a Derecho. Nótese

la importancia de la celebración de una vista a esos efectos, pues la Corte Suprema ha dispuesto que "[t]he fundamental requisite of due process of law is the opportunity to be heard". Goldberg v. Kelly, supra, pág. 267 (citando a Grannis v. Ordean, 234 US 385, 394 (1914)).

**B.**

Como es conocido, la acción de desahucio es el procedimiento que puede llevar una persona propietaria de algún bien inmueble para recuperar la posesión de hecho. El trámite de desahucio de nuestro ordenamiento está reglamentado en los Arts. 620 al 634 de la Ley de Procedimientos Legales Especiales, contenida en el Código de Enjuiciamiento Civil, 32 LPRA secs. 2821-2838.

Tradicionalmente, la causa de acción de desahucio se tramita de forma sumaria, pues el Estado tiene un interés de atender con agilidad el reclamo de una persona dueña de un inmueble que ha sido impedida de ejercer su derecho a poseer y disfrutar de su propiedad. ATPR v. SLG Volmar-Mathieu, 196 DPR 5, 9 (2016). Como corolario de lo anterior, el Art. 627 provee que los desahucios basados en falta de pago solo permiten que la parte demandada presente prueba de que pagó los cánones adeudados. 32 LPRA sec. 2829.

No obstante, este Tribunal ha reconocido que las partes demandadas tienen la facultad de presentar defensas afirmativas con el fin de convertir el procedimiento en uno ordinario. Mora Dev. Corp. v. Sandín, 118 DPR 733, 752-753, (1987). En virtud de lo anterior, los foros judiciales

gozan de discreción para convertir el procedimiento de desahucio en uno ordinario, prorrogar términos, posponer señalamientos y permitir enmiendas a las alegaciones. Turabo Ltd. Partnership v. Velardo Ortiz, 130 DPR 226, 241 (1992).

Particularmente, hemos enfatizado ese derecho en los casos donde la vivienda arrendada es parte de un programa de asistencia pública. Mora Dev. Corp. v. Sandín, supra; Turabo Ltd. Partnership v. Velardo Ortiz, supra. Ello, pues la vivienda pública responde a un significativo interés social y público. En ese sentido, la "**discreción del juez cobra mayor importancia ante situaciones en las que se solicita el desahucio de un inquilino que recibe subsidio federal o de otras fuentes gubernamentales**". (Negrillas suplidas). Turabo Ltd. Partnership v. Velardo Ortiz, supra, pág. 241.

Ahora bien, una vez adjudicada la causa de acción de desahucio, la parte desfavorecida tiene la facultad de apelar la misma. Específicamente, el Art. 628 provee lo siguiente: "[e]n los juicios de desahucio la parte contra la cual recaiga sentencia **podrá apelar la misma conforme a lo dispuesto en la Ley de la Judicatura de 2003**". (Negrillas suplidas). 32 LPRA sec. 2830. Asimismo, el Art. 629 especifica que – en el contexto de los desahucios – "**[l]as apelaciones deberán interponerse en el término de cinco (5) días,** contados desde la fecha de archivo en autos de la notificación de la sentencia, por las partes perjudicadas

por la misma o sus abogados". (Negrillas suplidas). 32 LPRA sec. 2831.

Como puede apreciarse, el estatuto es silente en torno a si estas normas apelativas relacionadas a los casos de desahucios aplican de igual modo al Tribunal de Apelaciones y al Tribunal Supremo. En virtud de este vacío legislativo, estimo adecuado auscultar y abundar en esta Opinión de Conformidad en torno a si el término apelativo de cinco (5) días antes dispuesto aplica igualmente a las personas que recurren de una determinación del Tribunal de Apelaciones ante el Tribunal Supremo. Veamos el historial legislativo y la jurisprudencia aplicable a esta controversia.

Inicialmente, la Ley de Desahucio de 9 de marzo de 1905, disponía que "[e]n los juicios de desahucio no se dará en ningún caso más de una apelación, que se ejercitará; para ante la corte de distrito, de la sentencia dictada por las cortes municipales; y **para ante la Corte Suprema de las dictadas en primera instancia por las cortes de distrito**". (Negrillas suplidas). De igual modo, el estatuto limitó por primera vez los términos para apelar una revisión en una controversia de desahucio al establecer lo siguiente: "[l]as apelaciones deberán interponerse en el término de cinco (5) días".

Nótese cómo en el referido estatuto quedó plasmada la intención clara e inequívoca de la Asamblea Legislativa de que toda apelación en el contexto de desahucio, tanto ante la entonces Corte de Distrito como ante el Tribunal Supremo,

estuviese cobijada por esas normas apelativas. Sin embargo, ello no ocurrió en un vacío. Al contrario, las normas apelativas de desahucio aplicaban igualmente a todos los foros revisores debido a que, en ese momento, la competencia apelativa del Tribunal Supremo era **obligatoria**. Andino v. Fajardo Sugar Co., 82 DPR 85, 93-94 (1961). Ante la realidad de que ello implicaba una alta congestión de su calendario y una dilación en la expedición de los recursos, la Asamblea Legislativa impuso el referido término de cinco (5) días para "imprimirle una mayor rapidez debido precisamente a su naturaleza especial". Íd., pág. 94.

No obstante, la Ley Núm. 115 de 26 de junio de 1958 **eliminó la naturaleza mandatoria de competencia apelativa del Tribunal Supremo y, con ello, el derecho absoluto de apelar todas las sentencias dictadas por el entonces Tribunal Superior**. "El propósito de esta reforma fue evitar la demora que se observaba en el trámite apelativo y lograr una pronta disposición de los recursos frívolos o huérfanos de méritos. En otras palabras, la intención legislativa fue garantizar un trámite rápido". Andino v. Fajardo Sugar Co., supra, pág. 92.

Ante esta nueva realidad, este Tribunal pautó un precedente que alteró significativamente el andamiaje apelativo en el contexto de desahucios antes expuesto. En Andino v. Fajardo Sugar Co., supra, se resolvió que, ante el hecho de que el Tribunal Supremo ejerce su competencia apelativa de manera discrecional, el referido término de

cinco (5) días perdió su razón de ser ante este Foro. Ello, pues su competencia discrecional descongestionó el calendario del Tribunal, lo cual le permite disponer de los recursos ante su consideración con mayor agilidad. A esos fines, el Tribunal razonó que:

> El término de cinco días lograba el propósito legislativo de acelerar la disposición de los casos de salarios porque se trataba de un recurso de apelación mandatorio dentro del cual bastaba la simple presentación del escrito de apelación para suspender la ejecución de la sentencia. **Pero desaparecido el carácter mandatorio de la apelación, el término de cinco días pierde su especial significación.** Como cuestión de realidad, la reducción de veinticinco días en el término no es una medida tan eficaz para acelerar el trámite como lo es la naturaleza discrecional en la expedición del auto de revisión, que depende de los fundamentos que se expongan en la petición. (Negrillas suplidas). Íd., págs. 93-94.

De este modo, el Tribunal abundó en que imponer un término de cinco (5) días para recurrir a este Foro constituía una "sanción muy severa, y ésta no puede haber sido la intención legislativa". Íd., pág. 94. Así, resolvió determinantemente que el **término de cinco (5) días dispuesto en lo que sería el actual Art. 629 no aplica a los recursos presentados ante el Tribunal Supremo y que, por ende, el término para recurrir a este Foro en una controversia de desahucio es de treinta (30) días.** Íd. En consecuencia, el término de cinco (5) días solo continuaba aplicando a las apelaciones dirigidas al entonces Tribunal Superior.

A la luz de este precedente y con la creación del Tribunal de Apelaciones, la Ley Núm. 291-1998 enmendó el

Código de Enjuiciamiento Civil para que el actual Art. 628 leyera del siguiente modo: "[e]n los juicios de desahucio la parte contra la cual recaiga sentencia podrá apelar la misma **ante el Tribunal de Circuito de Apelaciones** conforme a lo dispuesto en el Plan de Reorganización Núm. 1 de la Rama Judicial de 28 de julio de 1994". (Negrillas suplidas). Entiéndase, la Asamblea Legislativa reiteró lo pautado por este Tribunal en <u>Andino v. Fajardo Sugar Co.</u>, supra, y estableció claramente que las normas apelativas especiales para las controversias de desahucio solo aplican al Tribunal de Apelaciones, cuya competencia apelativa sí es mandatoria en esta materia. **Un análisis del historial legislativo de las posteriores enmiendas a este estatuto revela que esa intención legislativa se ha mantenido.**

Posteriormente, se aprobó la Ley Núm. 129-2007 la cual enmendó nuevamente el actual Art. 628 y estableció el siguiente texto que permanece vigente hasta la actualidad: "[e]n los juicios de desahucio la parte contra la cual recaiga sentencia **podrá apelar la misma conforme a lo dispuesto en la Ley de la Judicatura de 2003**". (Negrillas suplidas). 32 LPRA sec. 2830. Estoy conforme en que este Tribunal no haya adoptado una lectura formalista y autómata de este texto estatutario. Específicamente, en que se haya descartado pautar que esta enmienda extendió al Tribunal Supremo las normas apelativas relacionadas al procedimiento de desahucio. Tal interpretación no solo obvia el contexto

histórico antes expuesto, sino que además omite el historial legislativo que dio paso a esta enmienda.

La Ley Núm. 129-2007 tuvo su origen con el Proyecto del Senado Núm. 428, el cual inicialmente proponía eliminar en su totalidad el contenido del actual Art. 628. P. del S. 428 de 8 de marzo de 2005, 1ra Ses. Ord., 15ta Asam. Leg., en la pág. 4. Lo anterior, debido a que se entendía que su contenido se atendía en las Reglas de Administración del Tribunal de Primera Instancia, 4 LPRA Ap. II-B. Íd., pág. 2. Se desprende del historial legislativo que el único fundamento para eliminar la referencia directa al Tribunal de Apelaciones no fue para extender al Tribunal Supremo las normas apelativas de un desahucio, sino que respondió al entendido de que esas normas estaban codificadas en otros cuerpos normativos.

Sin embargo, un Informe rendido por la Cámara de Representantes resaltó que las Reglas de Administración del Tribunal de Primera Instancia no disponían del procedimiento apelativo de los desahucios. Informe positivo sobre el P. del S. 428, Com. de lo Jurídico y de la Seguridad Pública, Cámara de Representantes, 7 de noviembre de 2006, 4ta Ses. Ord., 15ta Asam. Leg., en las págs. 2-3. En consecuencia, en el Informe se propuso que el actual Art. 628 hiciera referencia tanto a la Ley de la Judicatura del 2003, Ley Núm. 201-2003, 4 LPRA sec. 21 et seq., como al **Reglamento del Tribunal de Apelaciones**, 4 LPRA Ap. XXII-B. Íd. Precisamente, a raíz de esta recomendación, se realizó

la referida enmienda al Art. 628 para que dispusiera que el procedimiento apelativo se haría según la Ley de la Judicatura del 2003, supra.

**A la luz de estos fundamentos, es forzoso concluir que las normas apelativas especiales relacionadas con los casos de desahucios no se extienden al Tribunal Supremo.** Nuestros pronunciamientos en Andino v. Fajardo Sugar Co., supra, se fundamentaron en un estado de Derecho que permanece inalterado: la facultad apelativa de este Foro es discrecional por tratarse de recursos de certiorari. **Ante esa realidad, un término apelativo de cinco (5) días para recurrir ante nos no se justifica.** Además, como vimos, la Asamblea Legislativa ha reiterado la norma pautada en este precedente.

En fin, un análisis del historial legislativo y de la jurisprudencia aplicable revela que el referido término apelativo de cinco (5) días está dirigido solamente a las revisiones de las sentencias del Tribunal de Primera Instancia ante el Tribunal de Apelaciones.

### III

Según adelantamos, los peticionarios fueron despojados de su vivienda pública sin un debido proceso de ley. Así lo determinó el Tribunal de Apelaciones mediante un dictamen que advino final y firme, en el que ordenó el inicio del trámite administrativo. A pesar de ello, los foros recurridos celebraron y validaron un procedimiento de desahucio atropellado y errado que obvió esa realidad.

Finalmente, los peticionarios acudieron ante este Tribunal en aras de lograr el remedio justo, oportuno y adecuado que desesperadamente auscultaban.

Ante nuestra consideración se encuentra un procedimiento de desahucio que no se celebró conforme a Derecho. En virtud de un contrato acordado y pactado por todas las partes, la AVP era la parte arrendataria y la entidad responsable de satisfacer los cánones mensuales al señor Payano. Al esta incumplir con su obligación, el señor Payano acudió al Tribunal de Primera Instancia para desahuciar a los peticionarios. No obstante, la AVP no fue incluida en el pleito.

Indudablemente, la AVP era parte indispensable en el desahucio de los peticionarios. La controversia no se podía adjudicar adecuadamente sin su presencia en el pleito. Regla 16.1 de Procedimiento Civil, 32 LPRA Ap. V. Al así hacerlo, los foros recurridos validaron una determinación final "inconsistente con la equidad y una conciencia limpia". Cirino González v. Adm. Corrección et al., 190 DPR 14, 46 (2014). Conforme a lo anterior, el Tribunal de Primera Instancia carecía de jurisdicción para atender el reclamo del señor Payano sin una parte indispensable. Romero v. S.L.G. Reyes, 164 DPR 721, 733 (2005).

De igual modo, las partes pactaron que la AVP era la entidad legitimada para desahuciar a los peticionarios. En clara contravención de ello, los foros primarios validaron que el procedimiento fuese iniciado por el señor Payano.

Además, ante un escenario tan complejo y revestido de tanto interés social, los foros recurridos confirmaron la adjudicación sumaria del pleito.

Como si fuera poco, una vez el recurso de los peticionarios fue expedido por este Tribunal, estos nos notificaron que **la AVP nunca celebró el procedimiento administrativo para dilucidar la cancelación del contrato.** Al contrario, la AVP se limitó a celebrar unas reuniones informales con los peticionarios y con otras familias desalojadas. Fue precisamente este reprobable error el que causó que los peticionarios se vieran forzados a arrendar otra vivienda.

Como puede apreciarse, la AVP agravó aún más el procedimiento errado y atropellado que ejecutó el Estado para desamparar a personas de probada necesidad económica de su hogar. El hecho de que los peticionarios se vieran obligados a arrendar una propiedad bajo su propio peculio no obvia los errores aquí plasmados y que ameritan un remedio completo y oportuno en ley. La omisión de la AVP de cumplir con sus responsabilidades no debe ser un subterfugio para privar a los peticionarios de un remedio.

Ante ese cuadro, hemos descargado nuestra responsabilidad y descartado validar una aplicación mecánica e irreflexiva del Derecho aplicable de parte de los foros recurridos que redundó en el desamparo de personas indigentes en torno a un derecho humano fundamental: la vivienda. A pesar de que el derecho a la

vivienda no consta expresamente en la Constitución de Puerto Rico, "[n]ada impide que judicialmente reafirmemos el derecho a la vivienda como uno que trasciende la expresión inconclusa constitucional de un pueblo, para convertirlo en un derecho humano, canalizable a través del esfuerzo y la estructura democrática vigente sin sujeción a rectificaciones históricas".[1] Towers Apartments v. Allende, 104 DPR 327, 333 (1975) (Sentencia) (Opinión de conformidad del Juez Asociado Señor Negrón García).

IV

El complejo de vivienda Las Gladiolas fue demolido bajo promesas y obligaciones jurídicas de realojar a la mayor cantidad posible de sus residentes en el nuevo proyecto. Ese compromiso ha sido incumplido reiteradamente y, por el contrario, la gran mayoría de los nuevos propietarios no son los antiguos, sino personas con un mayor poder adquisitivo.

Se desnaturalizó el proyecto y también se han desnaturalizado los principios más básicos del debido

---

[1]Como es conocido, "la intención de los miembros de la Asamblea Legislativa Constituyente fue dejar establecido que la omisión de un derecho no significa su exclusión". J. Santiago Nieves, Panel Acceso a la Justicia: Personas con impedimentos físicos (2002). A esos efectos, "[e]l destino incierto de la frustrada Sec. 20 de nuestra Constitución, late entre aquellos derechos que aunque no se mencionan expresamente en el texto, el pueblo se reserva frente al poder político creado". Amy v. Adm. Deporte Hípico, 116 DPR 414, 421 (1985). Véase, además, Organización de las Naciones Unidas, Folleto Informativo No. 21: El derecho a una vivienda adecuada (Rev. 1), https://www.ohchr.org/Documents/Publications/FS21_rev_1_H ousing_sp.pdf.

proceso de ley. Por eso, me expreso a través de esta Opinión de conformidad haciendo constar que en este calvario procesal hay mucho más detrás que una mera falta de una parte indispensable y para que lo expuesto sirva como uno de los bloques para construir un mejor derecho de vivienda al servicio de quienes lo necesitan y no de los que buscan servirse.


                                    Luis F. Estrella Martínez
                                        Juez Asociado